IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                           Criminal Action No.: 3:05–CR–3
                                                                      (JUDGE GROH)

SHAUN EUGENE REED,

        Defendant.

# REPORT AND RECOMMENDATION

## I. PROCEDURAL HISTORY

On January 19, 2005, Shaun Eugene Reed ("Reed") was named in a two- count Indictment. ECF No. 1. Reed's jury trial commenced on May 18, 2005. *See* ECF No. 34. During trial, Reed accepted the Government's offer to a plea agreement. ECF No. 30. As a result, Reed was sentenced on August 23, 2005, to ten months imprisonment, a fine of $1,000.00, two years supervised release, and a one-time special assessment of $100.00. ECF No. 39.

Reed filed a Motion to Dismiss pursuant to Title 28 U.S.C. § 2255 on June 8, 2006. ECF No. 43. On July 5, 2007, the undersigned entered a Report and Recommendation setting an evidentiary hearing, which was held on September 14, 2007. ECF Nos. 51 & 56. After the hearing, the undersigned entered a Report and Recommendation that Defendant's Motion be denied. ECF No. 57. Defendant objected [ECF No. 60], but the District Court adopted the Report and Recommendation on April 30, 2008. ECF No. 65. On May 9, 2008, Reed filed a Notice of Appeal. ECF No. 69. On July 28, an Order was entered terminating Reed's supervised release. ECF No. 84. The Fourth Circuit dismissed Reed's appeal in a Per Curiam decision declining to consider the case on February 10, 2009. ECF No. 85.

Reed then filed a Motion to Vacate Judgment on September 6, 2013. ECF No. 89. The undersigned construed Reed's Motion as a § 2255 and recommended it be denied on March 31, 2014. ECF No. 104. The District Court adopted the Report and Recommendation by Order entered April 24, 2014. ECF No. 106. Thereafter, Reed filed a Petition for Writ of Error Coram Nobis and Rule 60(d) Motion to Vacate Judgment on November 2, 2015. ECF No. 109. On November 4, 2015, Chief District Judge Groh referred this matter to the undersigned. ECF No. 110.

The undersigned entered an Order directing the Government to show cause why Reed's writ should not be granted. ECF No. 111. The Government filed its Response on November 23, 2015. ECF No. 114. Reed filed a Reply to the Government's Response on December 1, 2015. ECF No. 115. On January 6, 2016, the undersigned ordered the Government and Reed to submit memoranda of law addressing specific issues to provide a more complete record for the Court. ECF No. 118. The Government filed its Memorandum on January 29, 2016, and Reed filed his Memorandum on February 4, 2016. ECF Nos. 120 & 121.

## II. FACTUAL BACKGROUND

In 1985, Reed pleaded guilty to one count of armed robbery, a felony, in Maricopa County, Arizona. *State v. Reed*, No. 1CA–CR 10–0395, 2011 WL 2201555, at *1 (Ariz. Ct. App. 2011). The State of Arizona dismissed the allegation of dangerousness, and the "plea agreement specified that the offense was 'non-dangerous.'" *Id.* Thereafter, Reed was sentenced to five years of supervised probation and one year in jail. *Id.* On December 19, 1990, Reed was discharged from probation.

It is undisputed that on April 6, 2004, law enforcement had contact with Reed, who had two firearms in his possession. *See* ECF No. 114 at 1; ECF No. 115 at 1. Thereafter, Reed disputed that

he was in fact a prohibited person, and he "filed an application to set aside his conviction" in Arizona. *Reed*, 2011 WL 2201555, at *1. "The trial court denied [Reed's] application." *Id.* But, the Arizona Court of Appeals noted, "the court restored appellant's civil rights and his right to possess a firearm, although appellant's civil rights were restored automatically following his discharge from probation." *Id.* at *2 n.2.

On January 19, 2005, Reed was named in a two-count Indictment alleging that he violated Title 18 United States Code Sections 922(a)(6), 922(g)(1), and 924(a)(2). ECF No. 1. On May 18, 2005, during his trial, Reed entered a guilty plea as to Count Two in the Indictment. *See* ECF No. 34. Upon the Government's motion, Count One of the Indictment was dismissed. *See* ECF No. 39. Thereafter, Reed was sentenced and has since completed his sentence. *See Id.*; ECF Nos. 45 & 84.

### III. DISCUSSION

Reed has petitioned this Court for a Writ of Error *Coram Nobis*, and the basis of his argument is that he was not a prohibited person under 18 U.S.C. 922(g) when he was indicted because his civil rights were restored automatically upon successful completion of probation in 1990. In response, the Government argues that Reed's right to possess firearms was not restored until July 14, 2004, two months after the incident for which Reed was indicted. Neither party has outlined the standard for coram nobis, nor attempted to apply the facts of this case to that standard, as articulated by the Fourth Circuit.

#### A. CORAM NOBIS

"The authority of a federal court to issue a writ of coram nobis derives from the All Writs Act, codified at 28 U.S.C. § 1651(a). Section 1651(a) authorizes the federal courts to issue 'all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and

3

principles of law.'" *Bereano v. United States*, 706 F.3d 568, 575–76 (4th Cir. 2013). "A writ of error coram nobis can be used to vacate a conviction when there is a fundamental error resulting in conviction, and no other means of relief is available." *In re Acevedo*, 621 F. App'x 236 (4th Cir. 2015). "The remedy is also limited to petitioners who are no longer in custody pursuant to their conviction." *Id.* (citing *Carlisle v. United States*, 517 U.S. 416, 429 (1996)).

In 2012, the Fourth Circuit articulated the standard for coram nobis in *United States v. Akinsade*–the seminal coram nobis case in this Circuit.

> As a remedy of last resort, the writ of error coram nobis is granted only where an error is "of the most fundamental character" and there exists no other available remedy. *United States v. Mandel*, 862 F.2d 1067, 1075 (4th Cir.1988). The writ is narrowly limited to "'extraordinary' cases presenting circumstances compelling its use 'to achieve justice.'" *United States v. Denedo*, 556 U.S. 904, (2009) (quoting *United States v. Morgan*, 346 U.S. 502, 511 (1954)). Thus, the writ provides relief in cases where the error "rendered the proceeding itself irregular and invalid." *United States v. Addonizio*, 442 U.S. 178, 186 (1979) (internal quotation marks and citation omitted) (superseded by statute on other grounds). A petitioner seeking this relief must show that "(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character." *Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir. 1987).

686 F.3d 248, 252.

**B. TITLE 18 UNITED STATES CODE SECTION 922(g)(1)**

Reed's conviction is based upon § 922(g)(1), which says, "[i]t shall be unlawful for any person– . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess . . . or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

**C. ARIZONA'S STATUTORY SCHEME**

Appropriately, both Reed and the Government have focused their pleadings almost entirely on the sole issue of when Reed's right to possess firearms was restored. Both parties have emphatically asserted their positions with regard to this issue, which ultimately rests upon Arizona law.

The Ninth Circuit has decided cases of nearly indistinguishable relevant circumstances and considered the same Arizona statutes at play in the case *sub judice*. In *United States v. Meza-Corrales*, the second defendant ("Bridges") appealed his guilty plea to felon-in-possession charges. 183 F.3d 1116, 1127–30 (9th Cir. 1999). In considering his appeal, the Ninth Circuit first examined the federal statute under which Bridges was convicted, 18 U.S.C. § 922(g)(1), as provided above. *Id.* at 1127. The court also looked at 18 U.S.C. § 921(a)(20), "which states in pertinent part[, a]ny conviction . . . for which the person . . . has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such . . . restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." *Id.* In a footnote, the court explained, "the holding of our decision today will continue to be relevant for all past felons who were convicted under Arizona law prior to the date in 1994 and who might be prosecuted in the future for being a felon-in-possession under federal law." *Id.* at 1130 n.9.

The Ninth Circuit noted that the district court had appropriately performed a two-step analysis in determining whether Bridges was in violation of § 922(g)(1): "(1) determining whether Bridges's civil rights had not been restored under Arizona law; but (2) if a restoration was found to have occurred, determining whether Bridges's right to possess a firearm nonetheless somehow still was restricted in an express manner under Arizona law." *Id.* at 1128. If either of these two

5

conditions are met, then an individual rightfully could be convicted of being a felon in possession. *Id.*

It is important to note that Bridges's conviction was in 1988 and his discharge was in 1993.[1] *Id.* Accordingly, the Ninth Circuit considered Arizona's statutory scheme as it was during the time frame between Bridges's conviction and discharge, and it remained the same during that time. *Id.* Specifically, the court looked at A.R.S. §§ 13-904(A), 13-3101, and 13-912. *Id.* In 1993 (and 1990, when Reed was discharged) A.R.S. § 13-904(A) provided,

> A conviction for a felony suspends the following civil rights of the person sentenced:
> 1. The right to vote.
> 2. The right to hold public office of trust or profit.
> 3. The right to serve as a juror.
> 4. During any period of imprisonment any other civil rights the suspension of which is reasonably necessary for the security of the institution in which the person sentenced is confined or for the reasonable protection of the public.

*Id.* A.R.S. § 13-3101 provided that "'prohibited possessor' means any person: . . . (b) who has been convicted within or without this state of a felony involving violence or possession and use of a deadly weapon or dangerous instrument and whose civil rights have not been restored." *Id.* Finally, A.R.S. § 13-912 provided,

> A. Upon completion of the term of probation, or upon absolute discharge from imprisonment, and upon the completion of payment of any fine or restitution imposed, any person who has not previously been convicted of any other felony shall automatically be restored any civil rights which were lost or suspended by the conviction.
> B. This section does not apply to a person's right to possess weapons as defined in § 13–3101 unless he applies to a court pursuant to the procedures of § 13–906.[2]

---

[1] This is especially relevant because Reed was convicted in 1985 and received an absolute discharge in 1990. The statutory scheme considered by the Ninth Circuit for Bridges is the same that this Court must examine in the case at bar.

[2] Subsection (B) was added by amendment in June of 1988. Bridges was convicted later the same year.

*Id.*

In Bridges's case, both parties agreed that his civil rights had been restored, and thus, the district court's focus was only upon the second step, which considered "whether Bridges's right to possess a firearm nonetheless somehow still was restricted in an express manner under Arizona law." *Id.*

The Ninth Circuit disagreed with the district court's conclusion that Bridges was in violation of the federal statute. In reversing the district court and finding that Bridges's motion to dismiss his indictment should have been granted, the Ninth Circuit explained its reasoning:

> Step (2) of the analysis requires that the state law that restores a past felon's civil rights, nevertheless expressly provide that the past felon still may not possess firearms (or some subset of firearms). Here, it is quite clear that under Arizona law as of September 24, 1993, no such express provision existed. *See, e.g.*, *State v. Olvera*, 952 P.2d 313, 314 (1997) (noting that "[t]he statutory change [in 1994] made [the appellant] a felon whose right to possess a firearm was suspended") (emphasis added). A.R.S. § 13–904 did not suspend the right to possess a firearm at all, and A.R.S. § 13–3101 only prohibited possession of a firearm by past felons who had been convicted of felonies involving violence or the possession and use of a deadly weapon or dangerous instrument [and whose civil rights have not been restored].
>
> Moreover, although it is true, as the government points out, that A.R.S. § 13–912(B) expressly provided that A.R.S. § 13–912(A) did not apply to past felons so far as the automatic restoration of their rights to possess firearms was concerned, that provision had no relevance for step (2) of the analysis. That step requires that the state civil rights restoration law expressly provide that a past felon cannot possess a firearm (or some subset of firearms). However, Arizona law (A.R.S. § 13–912(B)) expressly provided only that the prior subsection dealing with the automatic restoration of civil rights generally, did not apply to a prior felon's right to possess a firearm. Arizona's civil rights restoration law did expressly provide that it would not restore a past felon's right to possess a firearm, but it did not expressly provide that he was prohibited from doing so if he had not lost the right previously (i.e., Arizona's restoration law did not give back anything that was formerly taken away, but at the same time, it did not take away anything that was not formerly taken away). The legislative history of the 1988 amendment that created A.R.S. § 13–912(B) also supports this reading. The legislative history mentions this provision having some effect only in the context of past felons who had committed crimes involving violence or the possession and use of a deadly weapon or dangerous instrument-the

7

only context that should have been relevant at all for this provision, given the above reading, because only past felons who had committed such crimes would have lost their rights to possess firearms under then-existing A.R.S. § 13–3101 and therefore only such past felons would have needed to avail themselves of this provision. Furthermore, prior to a 1994 amendment (which coincided with the 1994 amendments to A.R.S. §§ 13–904 and 13–3101), A.R.S. § 13–906 did not yet include a procedural mechanism for a past felon who committed a crime other than a dangerous offense to apply for a restoration of his right to possess a firearm, which omission can make sense only if such past felon's right to possess a firearm was not restricted under then-existing Arizona law.

*Id.* at 1129–30.

In 2006, the Ninth Circuit revisited this issue again in *Simpson*, where a district court dismissed an indictment charging the defendant with being a felon in possession of a firearm, and the Government appealed. *United States v. Simpson*, 442 F.3d 737 (9th Cir. 2006). Simpson, the defendant, was charged with three counts of sexual conduct with a minor, "all class two felonies and dangerous crimes against children in the first degree." *Id.* at 738. Eventually, he pleaded guilty to attempted sexual abuse of a minor, was sentenced to probation, and was discharged from probation in May 1991. *Id.* In 2003, Simpson was indicted under 18 U.S.C. §§ 921(g)(1) and 924(a)(2). The district court dismissed the indictment, on appeal, the Ninth Circuit affirmed.

The Court followed the process laid out in *Meza-Corrales*, beginning with determining whether Simpson's civil rights were restored. *Id.* at 739. The court noted that, prior to 1994, "Arizona law did not suspend Simpson's right to possess a firearm." *Id.* The court also noted that "Simpson was subject to several standard restrictive terms and regulations during the course of his two-year probation." *Id.* "Standard term 11 provided that Simpson could not 'possess, control, or own any firearms, ammunition, explosives, deadly weapons, or prohibited weapons as defined by A.R.S. § 13-3101.'" *Id.* The court noted that Simpson successfully completed his probation, and he was released from its restrictive terms; further, his rights which had been suspended under A.R.S.

8

§ 13-904(A) were automatically restored. *Id.* The Court cited A.R.S. § 12-912(A) (1991), which provided, "[u]pon completion of the term of probation . . . any person who has not previously been convicted of any other felony shall automatically be restored any civil rights which were lost or suspended by the conviction." *Id.* at 739–40. The court noted that Simpson had not been convicted of any other prior felony, and therefore, once he completed his term of probation, "all of Simpson's civil rights that had been suspended or restricted because of his 1989 conviction were restored to him by operation of law." *Id.* at 740.

The court then moved to the second part of the analysis, whether Arizona expressly prohibited Simpson from possessing a firearm. *Id.* The court rejected the Government's contention that Arizona prohibited Simpson from possessing a firearm. *Id.* The court pointed to A.R.S. § 13-904(A), which only suspended Simpson's rights to vote, hold public office, and serve as a juror, and were restored automatically by A.R.S. § 13-912(A). *Id.* The only restriction upon Simpson's right to possess a firearm was in the terms of his probation, which the court found expired upon his discharge from probation. *Id.*

The Ninth Circuit further explained why the Government was mistaken in its position that Simpson was prohibited from possessing a firearm:

> The government argues that the restrictive term prohibiting Simpson from possessing a firearm during his two-year probation survived the end of that probation, and that Simpson failed to take the steps necessary to restore his right to possess a firearm. This claim is erroneous. The government points out that in 1991, A.R.S. § 13–912(B) provided that § 13–912(A) "does not apply to a person's right to possess weapons as defined in § 13–301 unless he applies to a court pursuant to the procedures of § 13–906." However, Simpson's right to possess a firearm was never formally and indefinitely suspended in the same manner as were his rights to vote, hold office, and serve as a juror. Rather, the restrictions placed on Simpson's right to possess a firearm—as well as those placed on his right to be free of search and seizure absent probable cause—are more aptly described as special conditions imposed by the court

9

> which applied only for the period of probation (i.e., two years) and no longer. Thus, § 13–912(B)'s limitation is inapposite.
>
> Moreover, even if we were to countenance the government's assertion that the probation-period restrictions on Simpson's right to possess a firearm somehow survived the end of his probation, Arizona law certainly did not *expressly* provide that Simpson could not possess a firearm following his probation, as it must where his civil rights have been restored. *See* 18 U.S.C. § 922(g). Our conclusion is in harmony with our decision in *Meza–Corrales*, 183 F.3d at 1129–30. In that case, the government sought to bring felon-in-possession charges against a former Arizona prisoner, a first-time felon whose rights were restored to him under § 13–912(A) following his detention. We held that § 13–904(A) did not suspend the former prisoner's right to possess a firearm, and that § 13–912(A) restored to him all of his civil rights. The former prisoner's right to possess a firearm was undoubtedly restricted during his incarceration; yet we concluded that there were no express restrictions on the former prisoner's right to possess a firearm following his release and that, in the absence of some express restriction, § 13–912(B) was inapposite[.]
> . . .
> Accordingly, we conclude that nothing in Arizona law expressly prohibited Simpson from possessing a firearm following the end of his probation.

*Id.* at 740–41.

## IV. ANALYSIS

In determining whether Reed should be granted a Writ of Error in this case, the Court first set out to determine whether, as he claims, Reed should not have been considered a prohibited person in possession of a firearm when he was indicted in this matter. After that threshold inquiry, the Court must determine whether Reed has met the requisite elements of coram nobis as articulated in *Akinsade*.

### A. REED SHOULD NOT HAVE BEEN INDICTED AS A PROHIBITED PERSON.

After considering the relevant Arizona Revised Statutes and the Ninth Circuit's illustrative interpretation, the Court is left only find that Reed should not have been indicted under 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

Reed had no felonies prior to 1985. In 1985, he pleaded guilty to armed robbery, but the prosecution agreed to dismiss the "allegation of dangerousness; therefore, [Reed's] plea agreement specified that the offense was 'non-dangerous.'" *State v. Reed*, No. 1CA–CR 10–0395, 2011 WL 2201555, at *1 (Ariz. Ct. App. 2011). Thus, Reed was neither a prior felon, nor, under the terms of his plea agreement, was his crime "dangerous."

Regardless, after reviewing *Meza-Corrales* and *Simpson*, it seems clear that Arizona's statutory scheme at the time of Reed's conviction in 1985 through his discharge in 1990, leaves no doubt that his right to possess a firearm was not taken away by statute. Instead, just as in *Simpson*, Reed's right to possess a firearm was temporarily restricted pursuant to standard term 11 of his probation. *See* ECF No. 121-3. This restriction was lifted upon his successful completion of probation in 1990, when his other civil rights were also restored automatically by operation of law.[3] Assuming *arguendo* Reed's rights were somehow taken by statute, they were also restored when he was discharged. A.R.S. § 13-912 was amended in 1988 to include subsection (B) to address this issue; however A.R.S. § 13-904 was not amended until 1994 to include taking one's right to possess a gun or firearm.[4] *See Simpson*, 442 F.3d at 740 (noting that "§ 13-912(B)'s limitation is

---

[3] This much was noted by the Arizona Court of Appeals in 2011, when it noted that Reed's "civil rights were restored automatically following his discharge from probation." *Reed*, 2011 WL 2201555, at *2 n.2 (citing A.R.S. 13-912(A)(1)).

[4] In footnote 6, the court explains the reasoning behind its conclusion that A.R.S. § 13-904 "did not suspend the right to possess a firearm at all" prior to the 1994 amendment:
> This reading of former A.R.S. § 13–904 is bolstered by the fact that in 1994, the Arizona legislature deemed it necessary to amend the statute (into its present form) to prohibit possession of a firearm by any person who had been convicted of any felony.
>
> Moreover, it should be noted that although ¶ 4 of former A.R.S. § 13–904 could be read to restrict a past felon's right to possess firearms, it appears that the Arizona courts have not read it to do so, *see, e.g.*, *Olvera*, 952 P.2d at 314; that the Arizona legislature did not read it to do so; that both parties here do not read it to do so; and that the restriction on the right to possess firearms contained in that provision expires by its own terms (without any reliance on a separate restoration provision) once a convict is released from prison.

inapposite).[5] Therefore, Pursuant to the Ninth Circuit's analysis of the applicable Arizona statutes and logical alternative interpretations, Reed should not have been considered a "prohibited person" under 18 U.S.C. § 922(g)(1) when he was indicted by the Government.

## B. CORAM NOBIS IS APPROPRIATE RELIEF

"In order for a district court to reach an ultimate decision on coram nobis relief, a petitioner is obliged to satisfy four essential prerequisites." *Bereano v. United States*, 706 F.3d 568, 576 (4th Cir. 2013).

First, "a more usual remedy" must not be available. *United States v. Akinsade*, 686 F.3d 248 (4th Cir. 2012). Just as in *Bereano*, Reed has "served his sentence and paid his fine, [so] the usual postconviction remedy of habeas corpus is not available." 706 F.3d at 576.

Second, Reed must have valid reasons for not attacking his conviction earlier. A review of the record demonstrates that Reed has attempted to raise this issue, albeit unsuccessfully. His initial §2255 motion ultimately was dismissed because this Court found that he had waived his right to appeal or attack his sentence and conviction. ECF Nos. 43, 51, 57, & 65. After his release from custody (including supervised release), Reed filed what he styled as a "Rule 60(d) Motion to Vacate Judgement." ECF No. 89. The undersigned incorrectly construed that motion as a second or successive §2255 motion. ECF No. 104. In response to the undersigned's mistake, Reed sought an order from the Fourth Circuit authorizing the Court to consider a second or successive §2255

---

*United States v. Meza-Corrales*, 183 F.3d 1116, 1129 n.6 (9th Cir. 1999).

[5] The Court also notes that the amendment to § 13-912 occurred three years after Reed entered the plea deal, and the undersigned finds that even if it did have an effect, it should not apply because it would run afoul of the ex post facto prohibition. U.S. Const., Art. I § 9, cl. 3; Art. I, § 10, cl. 1; See Weaver v. Graham, 450 U.S. 24, 28 n.8 (1981) (noting that the Court had previously stated, "[s]o much importance did the convention attach to [the ex post facto prohibition], that it is found twice in the constitution") (quoting *King v. Missouri*, 107 U.S. 221, 227 (1883)).

motion; however, the Circuit Court correctly noted that Reed was not in custody, and thus relief under §2255 was inapplicable to him. ECF No. 109-1. The Circuit Court's Order was filed on June 16, 2015, and Reed filed, with this Court, the instant Petition on November 2, 2015. Thus, the undersigned finds the second factor satisfied.

Third, adverse consequences resulting from the conviction must be sufficient enough to satisfy the case or controversy requirement of Article III. Reed's underlying felony conviction is from thirty years ago, and he has had all of his civil rights restored from that conviction. In contrast, the federal conviction is only ten years old, and it clearly prohibits Reed from enjoying many of his civil rights, and other constitutional liberties felons fail to enjoy. Specifically, Reed avers that he used to work in the aviation industry, but now he is "barred from gainful employment in the aviation industry as a result of the instant federal conviction." ECF No. 109 at 14. Reed's inability to re-enter his previous line of work coupled with numerous other significant limitations individuals with federal felony convictions face establishes that he has suffered substantial adverse consequences.[6]

Fourth, whether the error is "of the most fundamental character such that coram nobis relief is required to achieve justice." *Akinsade*, 686 F.3d 248, 252–53 (internal citations omitted). The undersigned finds that indicting an individual when he ought not be, confining him to prison, fining him, and taking away the full compliment of rights that he should enjoy as a citizen who has not been convicted of a felony in federal court constitutes an error of the most fundamental character. There is no relief, other than a Writ of Coram Nobis for Reed to seek at this point. Accordingly, coram nobis relief is required to achieve justice.

---

[6] *See Bereano*, 706 F.3d at 576 (finding that petitioner suffered substantial adverse consequences, for example, by being disbarred from the practice of law as a result of his felony convictions).

## V. RECOMMENDATION

For the foregoing reasons, the undersigned hereby **RECOMMENDS** that [ECF No. 109] Defendant's Petition for a Writ of Error Coram Nobis and Motion to Vacate Judgment should be **GRANTED**. Accordingly, the undersigned also RECOMMENDS that Shaun Eugene Reed's conviction in this Court should be **VACATED**.

Any party may, within fourteen (14) days of the filing of this recommendation, file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge of record. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985): *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984). The Clerk is DIRECTED to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, at their last known address as reflected on the docket sheet, and to any other counsel of record, as applicable.

DATED: February 11, 2016

/s/ *James E. Seibert*
JAMES E. SEIBERT
U.S. MAGISTRATE JUDGE